IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RANDAL STRAUSS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:12CV3213 |
| | ) | |
| v. | ) | |
| | ) | |
| CENTENNIAL PRECIOUS | ) | **MEMORANDUM** |
| METALS, INC., a Colorado | ) | **AND ORDER** |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a diversity action requesting the winding up and dissolution of the "de facto partnership between the parties"; alleging breach of contract; and, alternatively, asserting a claim for unjust enrichment. (Filing 1-2, Complaint, at CM/ECF p. 1.) Plaintiff's causes of action arise out of the parties' online business venture promoting the sale of precious metals through a website called USAGold.com. Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as to all of Plaintiff's claims. (Filing 5.) I shall deny Defendant's motion.

## A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations & quotations omitted). This "plausibility standard" is not one of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." *Id.* (internal citations & quotations omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (internal citation omitted; quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## B. Plaintiff's Allegations

Plaintiff alleges that Defendant contacted him by e-mail, "seeking [his] assistance and collaboration in developing an online business venture whereby [Plaintiff] and Defendant would promote sales of precious metals through a website called USAGold.com." (Filing 1-2, Complaint, at CM/ECF p. 2.) The parties agreed to "enter into business" in February 1999 and, pursuant to the "agreed terms . . . of the business venture," Plaintiff would provide "content and analysis services in an effort to draw traffic to the website USAGold.com and develop the business" in exchange for 10 percent of Defendant's internet-connected retail profit. (Filing 1-2, Complaint, at CM/ECF p. 2.)

Plaintiff states that the parties "associated and entered into a partnership to 'carry on as co-owners a business for profit,' namely, to create a successful internet retail operation." (Filing 1-2, Complaint, at CM/ECF p. 5.) Further, the parties "shared the risks and benefits of the partnership including all profits." (Filing 1-2, Complaint, at CM/ECF p. 5.)

Plaintiff claims that the business venture proceeded under agreed terms for a number of years, "during which both parties received the benefits of each other's work and contributions." (Filing 1-2, Complaint, at CM/ECF p. 3.) Plaintiff further alleges that his services—which included providing content, analysis, development, technical support, imagery, search-engine optimization, positive references and goodwill through public communication, and consultation with Defendants' staff—were crucial to the development and success of USAGold.com. (Filing 1-2, Complaint, at CM/ECF p. 3.)

According to Plaintiff's complaint, he received 10 percent of Defendant's internet-connected retail profit on a monthly basis from February 1999 until August 2005, at which time Defendant informed Plaintiff that it wished to amend the terms of the business venture to reduce Plaintiff's share to 7.5 percent in order to fund expansion of the office, staff, and scope of operations. Plaintiff reluctantly agreed "for the benefit of the parties' business venture." (Filing 1-2, Complaint, at CM/ECF p. 4.) Plaintiff received 7.5 percent of internet profits from August or September 2005 until the fall of 2009. In November 2009, Defendant informed Plaintiff that "it wished to unilaterally amend the terms" of the business venture to reduce Plaintiff's share to a flat rate of $8,000 per month. Plaintiff claims that "[u]nder protest, and without waiving his claim to seven and one-half percent (7.5%) of the internet connected retail profits," Plaintiff received $8,000 per month from December 2009 until May 2011, after which Defendant stopped making payments to Plaintiff, but continued to enjoy the benefits of Plaintiff's contributions to the parties' business venture. Plaintiff alleges that Defendant has "engaged in conduct . . . which makes it unreasonably practicable for [Plaintiff] to carry on the business in partnership with Defendant, and/or . . . in conformity with the parties' agreement." (Filing 1-2, Complaint, at CM/ECF p. 5.)[1]

-----

[1]Both parties have filed evidence regarding the pending motion to dismiss. Defendant has filed copies of what it claims are two e-mail communications between the parties (Filing 6), and Plaintiff has filed an affidavit on his own behalf (Filing 14).

## C. Motion to Dismiss Plaintiff's Claims

Defendant has filed a Rule 12(b)(6) motion to dismiss each of Plaintiff's claims—dissolution of partnership, breach of contract, and alternatively, unjust enrichment.

### 1. Dissolution of Partnership

The Uniform Partnership Act of 1998 provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Neb. Rev. Stat. § 67-410(1) (Westlaw 2013). Under Nebraska law, "[t]he objective indicia of co-ownership are commonly considered to be: (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property. The five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership." *In re KeyTronics*, 744 N.W.2d 425, 441 (Neb. 2008) (discussing existence of partnership under Nebraska law) (footnote omitted).

"Of the five indicia of co-ownership, profit sharing is possibly the most important, and the presence of profit sharing is singled out in § 67-410(3)(c) as creating a rebuttable presumption of a partnership. However, what is essential to a partnership is not that profits actually be distributed, but, instead, that there be an interest in the profits." *Id.* at 443 (footnotes omitted). Here, Plaintiff has clearly alleged that the parties intentionally entered into a business venture for profit—profit shared by Plaintiff in exchange for his generation of business via the internet.

"There is no requirement that the parties have a 'specific agreement' in order to form a partnership. . . . [I]f the parties' voluntary actions form a relationship in

I have not considered any of this evidence in ruling on this motion.

which they carry on as co-owners of a business for profit, then they may inadvertently create a partnership . . . ." *Id.* at 439 (internal quotations, citations & footnotes omitted). Further, "[b]eing "co-owners" of a business for profit does not refer to the co-ownership of property, but to the co-ownership of the business intended to garner profits." *Id.* at 441 (footnote omitted).

Although the plaintiff does not allege that the parties had an actual loss-sharing agreement, he does claim that he took a reduced percentage of the business's internet-generated profits in order to fund expansion of the business. The lack of an explicit loss-sharing agreement is "of little import, since purported partners, expecting profits, often do not have any explicit understanding regarding loss sharing." Likewise, although Plaintiff does not explicitly allege that the parties own any joint property, "in an informal relationship, the parties may intend co-ownership of property but fail to attend to the formalities of title." *Id.* at 443 (footnotes omitted).

The factual allegations of Plaintiff's complaint are sufficient to allow one to reasonably conclude that the parties agreed to combine their skill, labor, and property in a business venture for the purpose of joint and shared profit. Defendant's plausible argument that Plaintiff was not a partner but, rather, an independent contractor being paid on a commission basis, is a factual question that cannot be resolved on a motion to dismiss. (Filing 7, Br. Supp. Mot. Dismiss at CM/ECF p. 9.) *See* Neb. Rev. Stat. § 67-410(3)(c)(ii) (Westlaw 2013) ("A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [f]or services as an independent contractor or of wages or other compensation to an employee.")

I conclude that Plaintiff has stated a claim for dissolution of the purported partnership, as he has alleged that Defendant effectively drove him out of the business venture by unilaterally, and repeatedly, reducing his share of the profits in a business which Plaintiff spent years helping develop. *See* Neb. Rev. Stat. § 67-439(5)(b)-(c) (Westlaw 2013) (partnership may be dissolved and business wound up only upon the

occurrence of certain events, including conduct by another partner relating to the partnership business which "makes it not reasonably practicable to carry on the business in partnership with that partner" or "[i]t is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement"). Therefore, Defendant's motion to dismiss Plaintiff's claim for dissolution of the partnership pursuant to Fed. R. Civ. P. 12(b)(6) shall be denied.

## 2. *Breach of Contract*

In order to recover on a breach of contract claim under Nebraska law, "the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002).

Here Plaintiff alleges that the parties agreed to enter into a business venture in February 1999, and that under the parties' agreed terms, Plaintiff would provide content and analysis services in an effort to draw traffic to the website USAGold.com and develop the business in exchange for 10 percent of Defendant's internet-connected retail profit. Plaintiff then alleges that Defendant unilaterally amended the terms of the business venture by reducing Plaintiff's share of the business to a flat rate of $8,000 per month, which Plaintiff received from December 2009 until May 2011. Plaintiff's complaint states that after May 2011, Defendant stopped making payments altogether, but continued to enjoy the benefits of Plaintiff's contributions to the parties' business.

These factual allegations, viewed as true, are sufficient to allege the existence of a promise between Plaintiff and Defendant (Plaintiff's performance of business development services in exchange for percentage of profit), breach of that promise (unilateral reduction of profit percentage given to Plaintiff), and damage to Plaintiff resulting from the breach (reduction and eventual loss of profit percentage that had been promised to Plaintiff). Therefore, Plaintiff has stated a claim for breach of

contract that is plausible on its face, and Defendant's motion to dismiss this claim under Fed. R. Civ. P. 12(b)(6) must be denied.

### 3. *Unjust Enrichment*

Defendant argues that Plaintiff's alternative claim for unjust enrichment must be dismissed because Plaintiff cannot simultaneously recover upon theories of quantum meruit *and* an express contract. *See Associated Wrecking & Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co., 424 N.W.2d 343, 348 (Neb. 1988)* ("Certainly, it is true that an implied contract cannot arise where an enforceable contract exists between the parties as to the same subject matter and a conflict would thereby result."); *Siebler Heating & Air Cond. v. Jenson, 326 N.W.2d 182, 184 (Neb. 1982)* (doctrine of unjust enrichment is one of quasi-contract where obligation or duty arises not from contract, but from "the law of natural immutable justice and equity"; because "there cannot be an express and implied contract for the same thing existing at the same time," plaintiff cannot allege an express agreement and also seek to recover at trial or on appeal under theory of quantum meruit).

It is true that a plaintiff may not recover damages on claims for unjust enrichment *and* an express contract when an enforceable, express contract exists between the parties regarding the same subject matter which underlies the relief requested. *City of Scottsbluff v. Waste Connections of Nebraska, Inc., 809 N.W.2d 725, 739-40 (Neb. 2011)*; *Associated Wrecking & Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co., 424 N.W.2d 343, 348 (Neb. 1988)*. However, the Nebraska Supreme Court has repeatedly held that a plaintiff may—and should—*plead* both express contract and quasi-contract in the same petition. *Byrne v. Hauptman, O'Brien, Wolf & Lathrop, P.C., 608 N.W.2d 208, 213 (Neb. App. 2000)*. *See also Professional Recruiters, Inc. v. Oliver, 456 N.W.2d 103, 107 (Neb. 1990)* (plaintiff is permitted to plead both express contract and quasi-contract in same petition; *Associated Wrecking & Salvage Co., 424 N.W.2d at 350* ("an implied contract on a point not covered by an express contract is not superseded by the express contract, and

if each arise out of the same transaction, they may be pleaded and tried together"); *Vantage Enterprises, Inc. v. Caldwell*, 244 N.W.2d 678, 680 (Neb. 1976) (when plaintiff had knowledge of all relevant facts and remedies, plaintiff should have joined alternative theories of quantum meruit and express contract into one action).

Therefore, I shall deny Defendant's motion to dismiss Plaintiff's unjust enrichment claim at the pleading stage of these proceedings because Plaintiff has properly pled his express contract and unjust enrichment claims "in the alternative." (Filing 1-2, Complaint at CM/ECF p. 6) Should motions for summary judgment be filed, the court will "address the contract claim first," remaining mindful that "a contract claim will supersede a quasi-contract claim arising out of the same transaction to the extent that the contract covers the subject matter underlying the requested relief." *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d at 740.

Accordingly,

IT IS ORDERED:

1. Defendant's motion to dismiss (Filing 5) Plaintiff's claim for dissolution of the partnership pursuant to Fed. R. Civ. P. 12(b)(6) is denied;

2. Defendant's motion to dismiss (Filing 5) Plaintiff's claim for breach of contract pursuant to Fed. R. Civ. P. 12(b)(6) is denied;

3. Defendant's motion to dismiss (Filing 5) Plaintiff's claim for unjust enrichment pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

DATED this 23rd day of January, 2013.

BY THE COURT:

*Richard G. Kopf*

Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.